# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

COMMODITIES EXPORT COMPANY,

    Plaintiff/Counter-Defendant,

v.                                                                 Case No. 09-CV-11060-DT

CITY OF DETROIT,

    Defendant,

and

UNITED STATES OF AMERICA,

    Defendant/Cross-Claimant,

and

DETROIT INTERNATIONAL BRIDGE COMPANY,

    Defendant/Counter-Plaintiff/Cross-Defendant
                                                    /

## ORDER DENYING DIBC'S MOTION FOR RECONSIDERATION

On July 9, 2010, the Detroit International Bridge Company ("DIBC") filed a motion for reconsideration of the court's June 29, 2010, order granting the United States of America's motion for summary judgment on the federal instrumentality issue. Pursuant to this court's order, responses were timely filed by Plaintiff Commodities Export Company, Defendant City of Detroit and Defendant United States of America. No hearing is necessary. *See* E.D. Mich. LR 7.1(h)(2). The court will deny the motion.

### I.  STANDARD

To prevail on its motion to reconsider, DIBC "must not only demonstrate a

palpable defect by which the court and the parties . . . have been misled but also show that correcting the defect will result in a different disposition of the case." E.D. Mich. LR 7.1(h)(3). The local rules provide that "[g]enerally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication." *Id.*

A motion for reconsideration should not be used to get a second bite at the apple, but should be used sparingly to correct *actual* defects in the court's opinion. *See Maiberger v. City of Livonia*, ____ F. Supp. 2d ____, 2010 WL 2772490, *18 (E.D. Mich. 2010) ("It is an exception to the norm for the Court to grant a motion for reconsideration. . . . [A]bsent a significant error that changes the outcome of a ruling on a motion, the Court will not provide a party with an opportunity to relitigate issues already decided."). The local rules encourage finality in opinions and discourage parties from "sandbagging" or holding back facts or arguments which could be raised in the initial round of briefing. As the Seventh Circuit explained:

> A party seeking to defeat a motion for summary judgment is required to "wheel out all its artillery to defeat it." *Employers Ins. of Wausau v. Bodi-Wachs Aviation Ins. Agency*, 846 F.Supp. 677, 685 (N.D.Ill.1994); *Ryan v. Chromalloy Am. Corp.*, 877 F.2d 598, 603-04 (7th Cir.1989). Belated factual or legal attacks are viewed with great suspicion, and intentionally withholding essential facts for later use on reconsideration is flatly prohibited. Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion. *In Re Oil Spill*, 794 F.Supp. 261, 267 (N.D.Ill.1992), aff'd, 4 F.3d 997 (7th Cir.1993) (citing *Publishers Resource v. Walker-Davis Publications*, 762 F.2d 557, 561 (7th Cir.1985)); *see also Bally Export Corp. v. Balicar Ltd.*, 804 F.2d 398, 404 (7th Cir.1986) (a motion to reconsider is not the appropriate vehicle to introduce new legal theories).

*Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

## II. DISCUSSION

In the court's June 29, 2010, Order, the court denied DIBC's motion for summary judgment and granted the United States's motion for summary judgment on the federal instrumentality issue. Specifically, the court rejected DIBC's various attempts to persuade the court that it lacked jurisdiction over this action, or should otherwise abstain from or dismiss this case, and instead found that the United States had shown as a matter of law that DIBC is not a federal instrumentality of the United States. DIBC timely filed a motion for reconsideration, arguing that the court's order "is premised upon a misunderstanding of material facts and legal concepts caused in principal part by misrepresentations of facts to the Court by which this Court was misled, resulting in a palpable error by the Court." (DIBC's Mot. at 1.) The bulk of DIBC's motion consists of a reassertion of arguments already presented to, and rejected by, the court. To the extent DIBC has presented any new arguments, it has nonetheless failed to identify a palpable defect by which the court has been misled, the correction of which will result in a different disposition of this case. The court will address each argument in turn.

### A. Abstention and State Law

DIBC first argues that the court should have abstained "from interfering with decisions of state courts concerning state land use and zoning issues." (DIBC's Mot. at 1.) DIBC argues, yet again, that this court should have deferred to the Michigan Supreme Court's decision in which it held that the DIBC "is a federal instrumentality for the limited purpose of facilitating traffic over the Ambassador Bridge and, as such, is

immune from the zoning regulation of the city of Detroit that would preclude construction projects furthering this limited federal purpose." *City of Detroit v. Ambassador Bridge Co.*, 748 N.W.2d 221, 223 (Mich. 2008). DIBC argues that this litigation is nothing more than an attempt to collaterally attack the Michigan Supreme Court's decision, that the Michigan Supreme Court is the highest authority on matters of state law, and general comity federalism principles require that this court defer to the Michigan Supreme Court on this issue. DIBC also argues that this court "failed to consider the impact on Michigan law of" the June 29, 2010 order (DIBC's Mot. at 4), that the court cannot overturn the ruling of the Michigan Supreme Court (DIBC's Mot. At 14), and that this litigation is "an invitation to inappropriate results" (DIBC's Mot. at 14). For the reasons set forth below, the court rejects DIBC's arguments, which are labeled in its motion as Arguments 1, 2, 6, and 7.

None of DIBC's arguments are new; none of DIBC's arguments identify any factual mis-statement in the court's previous order. DIBC has not pointed to any palpable defect in the court's order; it merely intimates that the court "got it wrong." A motion for reconsideration should not be used by a losing litigant to stubbornly insist upon its favored result, for reasons it has already asserted "either expressly or by reasonable implication." E.D. Mich. LR 7.1(h)(3). In its June 29, 2010, order, the court specifically addressed DIBC's arguments related to this court's jurisdiction, the interplay with the Michigan Supreme Court's decision, and even the potential preclusive effect of the Michigan decision. (6/29/10 Order at 15-21.) The issues now raised by DIBC were either expressly raised in the previous briefs, or were raised "by reasonable implication." First, the court remains unconvinced that the determination of DIBC's

status as a "federal instrumentality" is a state law issue in the first place but, instead, presents a federal question and is controlled by the federal case law discussed in the court's previous order. As stated by the Sixth Circuit, and cited by the United States:

> If this were a question of state law, the federal courts would indeed be obligated to defer to the decisions of the Michigan courts. But we are not deciding a question of state law; as noted above, First American has not appealed the dismissal of its state-law claim. A state court's opinion on an issue of federal law-or, in our case, a state court's opinion on a state-law issue that also arises in federal law-is entitled to no deference whatsoever. *See Wallace v. Cranbrook Educ. Cmty.*, No. 05-73446, 2006 WL 2796135, *6 (E.D. Mich. Sept.27, 2006) ("Although federal courts must defer to a state court's interpretation of its own law, federal courts 'owe no deference' to a state court's interpretation of federal law.") (quoting *United States v. Miami Univ.*, 294 F.3d 797, 811 (6th Cir.2002)); accord *Hawkman v. Parratt*, 661 F.2d 1161, 1166 (8th Cir.1981).

*First American Title Co. v. Devaugh,* 480 F.3d 438, 455 (6th Cir. 2007). The issues decided by the court in its June 29, 2010 opinion are issues of federal law and, accordingly, the court owed no deference to the Michigan Supreme Court.

Second, the court carefully considered the various abstention doctrines and concluded that abstention was not appropriate in this case. Indeed, DIBC acknowledges as much when it states that the court "reject[ed] on technical grounds all of the abstention doctrines DIBC raised," (DIBC Mot. at 5). DIBC argues that the court failed to undertake the analysis counseled by *Gottfried v. Medical Planning Services*, 142 F.3d 326 (6th Cir. 1998) (relying on the *Pullman* abstention doctrine). Nothing DIBC now argues identifies a palpable defect by which the court has been misled. Instead DIBC merely sets forth the same abstention arguments it has put before the court on numerous occasions before, buttressed by a few arguments which *could* have been set forth before. This is not a valid basis for a reconsideration motion.

5

The court remains unpersuaded abstention is warranted in this case. The court recognizes the possible implications of this court's order in contrast to the Michigan Supreme Court decision, but agrees with the observation of the United States in response:

> To the extent that the state and federal decisions are inconsistent, it will be up to a court that needs to apply those decisions to determine how and whether to reconcile the apparent inconsistency or to determine which law to apply in the case at hand. But the prospect of this potential difficulty should not deter this Court, a federal court, from its independent duty to decide matters of federal law.

(Gov't's 7/26/10 Resp. at 8.)

Despite such "potential difficulties," there is no abstention doctrine which can justify this court ignoring its duty to decide federal questions placed before it. For example, because Plaintiff was not a party to the Michigan Supreme Court case the *Rooker-Feldman* doctrine does not apply. *See Pieper v. Am. Arbitration Ass'n, Inc.*, 336 F.3d 458, 463 n.4 (6th Cir. 2003) (The "*Rooker-Feldman* doctrine could not apply to parties that were not present in the state-court litigation.") (citation omitted). For the same reason, *Younger* abstention is not appropriate, there is no violation of the Anti-Injunction Act, and no res judicata issues. *See Gottfried v. Medical Planning Services, Inc.*, 142 F.3d 326, 329 (6th Cir. 1998) ("One could argue that the ongoing injunction is the equivalent of a pending state court action for purposes of *Younger* abstention. Yet that argument only holds if the federal plaintiff is a party to the state court's injunction. As with the Anti-Injunction Act and the rules of preclusion, *Younger* abstention cannot apply to one like Gottfried who is a stranger to the state proceeding." (citations omitted)); *see also id.* ("[T]he Anti-Injunction Act does not bar federal lawsuits filed by

individuals who, like Gottfried, were "strangers to the state court proceedings.") (quoting *County of Imperial, Cal. v. Munoz*, 449 U.S. 54, 59-60).

Nor is temporary abstention warranted under the doctrine set forth by *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). In *Colorado River*, the Supreme Court held that federal courts may abstain from hearing a case solely because similar pending state court litigation exists. *Colorado River*, 424 U.S. at 817; *Romine v. Compuserve Inc.*, 160 F.3d 337, 339 (6th Cir. 1998). "[D]espite the 'virtually unflagging obligation of the federal courts to exercise the jurisdiction given them,' . . . considerations of judicial economy and federal-state comity may justify abstention in situations involving the contemporaneous exercise of jurisdiction by state and federal courts." *Romine*, 160 F.3d at 339 (quoting *Colorado River*, 424 U.S. at 817.). Here considerations of comity and judicial economy do not justify disregarding this court's obligation to exercise the jurisdiction given it to decide matters of federal law. The Michigan Supreme Court's decision is final and, despite the apparent presence of a lower court injunction, does not constitute an on-going proceeding. While some of the issues are similar, the court does not consider the state court proceeding to be "parallel" as the state court proceeding involved a narrower issue than that involved in this litigation and, further, the presence of the United States in this action involving a federal question further counsels against staying this action in favor of a state court proceeding. This is particularly true where the abstention under the *Colorado River* doctrine is only temporary. The federal court proceedings would be stayed for some unspecified time, only to be later reinvigorated.

7

Finally, *Pullman* abstention is not appropriate here. *Pullman* abstention "requires that 'when a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state law question and thus avoid the possibility of unnecessarily deciding a constitutional question.'" *Associated Gen. Contractors of Ohio, Inc. v. Drabik*, 214 F.3d 730, 739 (6th Cir. 2000) (quoting *Harris Cnty. Comm'rs Court v. Moore*, 420 U.S. 77, 83 (1975)). There is no "underlying state law question in this case," and the primary determination of the court's June 29, 2010 order is not a constitutional question which could be avoided by abstention. *See also Anderson v. Charter Tp. of Ypsilanti* 266 F.3d 487, 491 (6th Cir. 2001) ("[T]he classic reason to apply the Pullman abstention doctrine is where the remanded state-law question is an independent and unsettled issue best decided by the state courts.").

Thus, because DIBC cannot use a motion for reconsideration as a vehicle to relitigate issues that have already been decided, either expressly or by reasonable implication, the court rejects DIBC's abstention and state law arguments. DIBC has raised most of the arguments in the past, and could have raised the others. The court remains unpersuaded that abstention is warranted in this case, or that the court acted improperly in ruling, to whatever degree such ruling may be seen as inconsistent with earlier declarations of the Michigan Supreme Court. Plaintiff's Arguments 1, 2, 6, and 7 are thus rejected.

### B. 23rd Street

In DIBC's Argument 3, it asserts that the court, the City of Detroit, and the United States were all misled into believing that Plaintiff owned property that abutted former

23rd Street. DIBC argues that Plaintiff does not own property abutting 23rd Street, and that instead Plaintiff's property abuts Lafayette Street, which at one time intersected with 23rd Street. (DIBC's Mot. at 8.) DIBC contends the "foundation" of this court's June 29, 2010, order

> lies in the premise or assumption that there is a case or controversy between the U.S. and DIBC because DIBC asserted its federal instrumentality status to deprive Plaintiff of property rights in former 23rd Street which were unique to Plaintiff and not shared by the public in general. No part of that underlying premise or assumption is supported by the facts or the law.

(*Id.* at 9.) According to DIBC, this factual misunderstanding has "jurisdictional and substantive consequences" because it somehow strips the court of subject matter jurisdiction and renders its June 29, 2010 order an advisory opinion. (DIBC Reply, Dkt. #116, at 2.)

The court disagrees. The essence of Plaintiff's complaint is and has always been that DIBC's actions have cut off all access to Plaintiff's property. This remains true whether or not Plaintiff's property actually abuts 23rd Street. In this case, it is materially undisputed that the actions of DIBC have land-locked Plaintiff's property, with the possible exception of a meandering, *temporary* pathway which DIBC voluntarily placed through its possible to reach Plaintiff's property. The court personally toured this pathway, with counsel, on May 13, 2010, and it simply does not substitute for a city road. Plaintiff's property is, for all intents and purposes, landlocked. Plaintiff's ability to challenge DIBC's actions does not depend on whether its land abuts 23rd Street, it just depends on whether Plaintiff's property was entirely or materially cut off. *See Phelps v. Stott Realty Co.,* 207 N.W. 2, 5 (Mich. 1926) ("It is a well-settled rule that a lot owner's right to object to the vacation of a part of a street depends upon whether his lot abuts

9

upon or comes in actual contact with the vacated portion, or access to his lot is entirely or materially cut off by reason of the vacation." (quotation omitted)). Accordingly, DIBC has not identified a palpable defect, the correction of which will result in a different disposition of this case and its argument regarding 23rd Street is rejected.

### C. Ammex

In DIBC's fourth argument, it asserts that any actions of which Plaintiff complains with respect to its land-locked property were taken by Ammex, not DIBC. DIBC contends that it was Ammex who, through operation of its duty free store, "reconfigured" the sterile zone around Plaintiff's property. Thus, DIBC contends, "there is no actual or threatened controversy with respect to any action by DIBC concerning former 23rd Street that formed the basis for Plaintiff's alleged deprivation." (DIBC Mot. at 10.) DIBC further argues that "no actual or threatened invocation by DIBC of federal instrumentality status (which did not happen in any event) could or would cause any harm to the federal government." (*Id.*) The court finds this argument somewhat disingenuous and, more importantly, mistaken.

First, as a factual matter, that it may have been Ammex who is technically the duty free store operator or the permit holder does not necessarily mean that DIBC is entirely uninvolved in the actions complained of in this lawsuit. DIBC appears to argue that because Ammex was an alleged wrongdoer, DIBC could not have been. At the inception of this lawsuit, however, Plaintiff may have had a cause of action against both DIBC and Ammex, but chose to only sue DIBC.[1] Based on all the pleadings before the

---

[1] The court also notes that Ammex and DIBC appear to be substantially related sister companies.

court, it certainly appears to the court that, even if Ammex was the technical owner of the property, its decisions and operations are effectuated by DIBC.

However, the court need not delineate the family tree of the two companies because, fundamentally, the court's June 29, 2010 opinion does not depend upon the truth of Plaintiff's allegations against DIBC.  Plaintiff sued Detroit over Detroit's action –or inaction– after DIBC's invocation of federal instrumentality status, and it was DIBC who intervened in this action.  As stated in the court's previous opinions, Plaintiff's allegations gave rise to *potential* liability of the United States, allowing the Cross Claim against DIBC seeking a declaration that DIBC is not a federal instrumentality.  The United States correctly asserts, with respect to this argument as well as the 23rd Street argument, that the justiciable controversy exists in this case due to "the *allleged* wrongdoing of entities with questionable federal instrumentality status."  (U.S. Resp. at 10.)  DIBC's motion based on this issue is denied.

### D.  International Trade

Finally, DIBC argues that the court "failed to consider the unique and necessarily federal nature of the operation of the Ambassador Bridge when the [c]ourt based its determination of the federal instrumentality status of DIBC on only the 8 criteria discussed in the [c]ourt's Summary Judgment Decision."  (DIBC Mot. at 11.) In this argument, DIBC asserts that it occupies a unique position as a facility of international and interstate commerce and that DIBC's "facilitation of that traffic is a federal function albeit performed by a private actor."  (DIBC Mot. at 13.)  DIBC concludes:

> The fact that DIBC may not have met the eight factor test is immaterial to its status as operating exclusively in international and interstate commerce.  Whether DIBC is called a federal instrumentality or is not called a federal instrumentality is immaterial to the fact that state law and

11

>local ordinance cannot be applied in a manner that would impede its facilitation of international and interstate commerce.

(DIBC Mot. at 14.)

As explicitly stated in the court's prior opinion, the eight factors suggested by the United States did not comprise an exhaustive list, nor did the court apply them exclusively. They constituted merely a sensible starting point for determining whether DIBC was a federal instrumentality based on the evidence submitted to the court. Based on that evidence, and in the complete absence of any evidence to the contrary submitted by DIBC, the court found as a matter of law that DIBC was not a federal instrumentality. DIBC, arguing that the court neglected to consider that the DIBC operated an international bridge, is doing no more than stating its disagreement with the court's conclusion that DIBC does not possess federal instrumentality status, in essence saying, "yes we do." The court –and everyone else in this case, of course– was fully aware of the fact that the bridge in question –like several others– is international, and spans the border between the U.S. and Canada. DIBC has not identified a palpable defect in the court's analysis.

Moreover, DIBC's argument appears to be focused on DIBC's fear of the possible effect of the court's order, rather than the analysis found within the court's order. The court's order held that DIBC was not a federal instrumentality. The court did not make any express rulings on whether and which state laws or local ordinances apply to DIBC's operations. This issue will likely be the subject of extensive future litigation. The court has ruled only that DIBC may not hold itself out as a federal instrumentality, as the United States has shown as a matter of law that DIBC is not a federal instrumentality. What that will mean to DIBC's operations is left for another day.

## III.  CONCLUSION

DIBC has failed to identify (1) a palpable defect in the court's June 29, 2010 opinion, (2) by which the court and the parties have been misled, and (3) the correction of which will result in a different disposition of the case.  *See* E.D. Mich. LR 7.1(h)(3).  Accordingly,

IT IS ORDERED that DIBC's motion for reconsideration [Dkt.# 104] is DENIED.


      S/Robert H. Cleland
      ROBERT H. CLELAND
      UNITED STATES DISTRICT JUDGE

Dated:  March 18, 2011

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 18, 2011, by electronic and/or ordinary mail.

      S/Lisa Wagner
      Case Manager and Deputy Clerk
      (313) 234-5522


S:\Cleland\JUDGE'S DESK\C3 ORDERS\09-11060.COMMODITIES.Reconsideration.2.wpd